UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JACOB A. FAWFAW #511339,

    Plaintiff,

v.

UNKNOWN OBIDEN, et al.,

    Defendants.
_____/

Case No. 2:18-cv-00077

Hon.  Gordon J. Quist
U.S. District Judge

**REPORT AND RECOMMENDATION**

### I. Introduction

This is a civil rights action brought by state prisoner Jacob A. Fawfaw pursuant to 42 U.S.C. § 1983.  Fawfaw says that while he was confined in the Baraga Correctional Facility during November of 2017, Defendants Sergeant Mathew Obiden and Corrections Officer Timothy Maki violated his Eighth Amendment rights by failing to protect him from self-harm.  Defendants filed a motion for summary judgment.  (ECF No. 41.)  I respectfully recommend that the Court grant the motion for summary judgment and dismiss this case.

### II. Factual Allegations

On November 11, 2017, Fawfaw cut himself with a razor blade across his throat and chest.  Fawfaw says that Corrections Officer Snarsky was working in his wing and that Nurse Riley placed him on "suicide prevention" pursuant to policy.  (ECF No. 1, PageID.5.)  Fawfaw complained to Corrections Officer Mackey about being

placed in a dirty cell.¹ (*Id.*) Fawfaw says that Officer Mackey refused to move him to a different cell, so Fawfaw responded by cutting himself with a razor blade he had hidden in his mouth. (*Id.*) Officer Mackey called the nurse and videotaped the incident. (*Id.*) Fawfaw says that this happened three times. (*Id.*)

A prisoner observation aide (POA) was assigned to observe Fawfaw while he was on suicide watch. (*Id.*) Fawfaw says that he asked the POA to get him medical treatment. (*Id.*) Fawfaw says that the prisoner went to get help, but returned shortly thereafter. Fawfaw says that the POA told him that Defendant Maki said that Fawfaw should kill himself. (*Id.*) Fawfaw says that with Defendant Maki's "direct order," he began to cut his neck and upper chest with a razor blade. (*Id.*) Fawfaw says that he began to "bleed profusely" and hit the emergency response button and banged on the cell door. (*Id.*)

Fawfaw says thatDefendant Maki came to his cell between the hours of 11:00 p.m. and 1:00 a.m. and said he should "cut deeper, kill yourself, nobody is going to help you, and to try harder." (*Id.*) Fawfaw says that Defendant Maki called Fawfaw a "CSC boy" in an attempt to make him a target for other inmates. (*Id.*) Fawfaw believes that Defendant Maki watched on the surveillance screen while Fawfaw cut his throat with a razor blade. (*Id.*)

Fawfaw says that Corrections Officer White² observed him cutting his suicide blanket into a rope to try and hang himself. (*Id.*) Fawfaw says that although White

---

¹ Fawfaw refers to Officer Mackey. It is unclear if he is referring to Defendant Maki or a different individual.
² White is not a defendant in this case.

- 2 -

attempted to reason with him, he was not responsive, but did inform White that he needed medical attention. (*Id.*)

Later, when Defendant Obiden made rounds, Fawfaw says he informed Obiden about the mistreatment, including the dirty cell, and requested medical treatment. (*Id.*) Fawfaw says that he showed Defendant Obiden that he had a razor blade and Defendant Obiden walked away from the cell. (*Id.*) Fawfaw says he did not see Defendant Obiden again that night. (*Id.*)

Fawfaw says that during the morning of November 12, 2017, Nurse Corrigan asked Fawfaw if he wished to see a psychologist by video conference. (*Id.*, PageID.6.) Fawfaw told her that she needed to look at his wounds to stop the bleeding and that his cell was not sanitary. (*Id.*) Fawfaw says that Nurse Corrigan told him that the sanitation of his cell was a custody issue and she could not move him. (*Id.*) After the video conference, Fawfaw was moved to a new cell. (*Id.*)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV. Eighth Amendment

Fawfaw argues that his Eighth Amendment rights were violated by Defendants when they failed to protect him from self-harm, encouraged him to harm himself, failed to provide him medical care or treatment, and refused to remove him from the dirty observation cell.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might

endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence,", but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in

an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The Sixth Circuit held that where ongoing treatment for a medical condition has been provided, the Eighth Amendment requires a showing that the care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (citing *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005)).

A claim of deliberate indifference to serious medical needs can arise in a variety of circumstances. The prison-suicide scenario provides one variation of this cause of action.

> Generally, the deliberate indifference issue in inmate suicide cases arises under one of two broad fact situations. First is a suicide or

> attempt that occurs when jailers failed to discover the decedent's suicidal tendencies. Second is a suicide or attempt that occurs when jailers have discovered the tendencies and have taken preventive measures. The legal inquiry is the same in both sets of cases: whether the jailers were deliberately indifferent to the risk of suicide.
>
> . . . .
>
> It is deceivingly inviting to take the suicide, *ipso facto,* as conclusive proof of deliberate indifference. However, where suicidal tendencies are discovered and preventive measures taken, the question is only whether the measures taken were so inadequate as to be deliberately indifferent to the risk. The suicide is not probative of that question—we can conceive of cases wherein jailers are deliberately indifferent and yet the attempted suicide fails. *Cf. Bell,* 741 F.Supp. 1354 (fact question remained precluding summary judgment). Just as that failure would not disprove deliberate indifference on the part of the jailers, neither does a success prove it. In fact, tying the suicide to proof of deliberate indifference is tantamount to requiring jailers to provide suicide-proof institutions.

*Rellergert by Rellergert v. Cape Girardeau Cty., Mo.*, 924 F.2d 794, 796 (8th Cir. 1991)

(footnote and citation omitted).

### V. Analysis

In this case, Fawfaw attributes troubling statements and acts to Defendants. He alleges that Defendants did not stop him from self-harm and were essentially attempting to goad him into killing himself. Fawfaw's allegations do not, however, square with the undisputed evidence contained in the record.

The medical records show that Fawfaw was seen by a nurse on **November 11, 2017 at 11:54 p.m.**, for superficial wounds to his face, neck, shoulders, and chest. The wounds were cleaned and pressure was applied to stop the bleeding. Fawfaw said that he had been cutting himself because it made him feel good and helps him to relax. According to the medical records, Fawfaw was placed in observation and

assigned a constant POA at that time. (ECF No. 42-2, PageID.184-185.) The medical records associated with this first visit with medical staff is shown below.

MICHIGAN DEPARTMENT OF CORRECTIONS

NURSE PROTOCOL

SITE: AMF
COMPLETED BY: Amy S. Rajala, RN    11/11/2017 11:54 PM

Patient Name: Jacob Fawfaw
DOB:
ID#: 511339

Patient presenting with chief complaint(s)of: Integumentary, Psychiatric.

**Vital Signs:**

| Date | Time | Temp | Pulse | Pattern | Resp | Pattern | BP | Sp O2 | Peak Flow | Weight Lb |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/11/2017 | 11:55 PM | 97.8 | 87 | | 16 | | 112/79 | 99 | | |

ALTERATION IN SKIN INTEGRITY_____

**Subjective:**
Affected body part? generalized
How did it occur? Inmate is "cutting"
Recent allergen exposure? no

" I like to do this it feels good. It helps me to relax."

**Objective:**
Wound Location: generalized.

Examination shows superficial injury to skin;

Signs & symptoms of infection: No evidence of infection. increased redness,

Date of last tetanus booster: 03/02/2015

Inmate has cuts on face, neck, shoulders and chest. Inmate will be placed in OBS with a constant POA. ROBERTA R will be completed.

(ECF No. 42-2, PageID.184.)

Fawfaw was also referred to mental health services. The associated referral is shown below.

```
PATIENT:                Jacob Fawfaw
DATE OF BIRTH:          █████
DATE:                   11/11/2017 11:54 PM
INMATE ID:              511339
```

### Mental Health Services Referral

| | | |
|---|---|---|
| TO: | Mental Health Services | **R**easoning |
| | | **O**rientation |
| FROM: | Amy S. Rajala, RN | **B**ehavior |
| | | **E**motion |
| DATE: | 11/12/2017 | **R**ecall/Memory |
| | | **T**alk |
| | | **A**ppearance |
| | | **R**elationships |

**Reason for Referral:**
Inmate is "cutting" himself. Inmate stated that the "GODS" told him to do it. Inmate said it helps him to relax. Inmate is very relaxed at time of assessment. He is alert and oriented and answers all questions appropriately.

**Desired Action**
Please assess.

**Response Date:** 11/12/2017

**Response:**

**Provider:** Chung Oh DO

**Document generated by:** Amy S. Rajala, RN

(*Id.*, PageID.187.)

Fawfaw was then examined by Nurse Corrigan on **November 12, 2017, at 8:36 a.m.** This examination revealed no infection but some slight bleeding in some locations. The areas were cleaned and a dressing was applied. Fawfaw said he had cut himself with a razor that he had thrown down the toilet. The observation cell was searched, but a razor was not found. (*Id.*, PageID.191-193.) The associated record is shown below.

**MICHIGAN DEPARTMENT OF CORRECTIONS**
**MICHIGAN DEPARTMENT OF CORRECTIONS - BUREAU OF HEALTH CARE SERVICES**

PATIENT: Jacob Fawfaw
DATE OF BIRTH:
DATE: 11/12/2017 8:36 AM
INMATE ID: 511339

**Clinical Progress Note**

**Comments:**
Inmate seen on AM HS rounds. Inmate is AOx3 answering questions appropriately. Inmate has dried blood all over his torso from cutting his self on previous shift. Inmate states he does want to have a video conference with MH. Inmate is eating meals per custody. Inmate to shower to clean areas to assess superficial wounds.

Date: 11/12/2017
Time: 8:36 AM
User: Elizabeth M. Corrigan, RN

**Comments:**
Inmate seen in HU3 clinic after he showered. There is numerous superfical self inflicted lacerations to chest, neck, face and arms that he states he inflicted with a razor, that he states he flushed down toilet last night. two lacerations on his chest are slightly bleeding and a bandaide was placed over both of these. all other lacerations have scabs formed over and are OTA. Inmate obs cell was looked through nothing was found, inmate provided new gown and matt.

Date: 11/12/2017
Time: 9:33 AM
User: Elizabeth M. Corrigan, RN

Provider: Chung Oh DO

Document generated by: Elizabeth M. Corrigan, RN

(*Id.*, PageID.193.)

Fawfaw had a psychological and suicide risk evaluation by a Qualified Mental Health Professional at **10:25 a.m. on November 12, 2017**. Fawfaw explained that he had been cutting for years because it helped him get rid of depression. Fawfaw denied suicidal thoughts or ideations. His risk level was lowered to a moderate level risk of suicide or self-injury. Fawfaw was placed in an observation cell with a minimum of 15-minute variable rounds by an officer. (*Id.*, PageID.195-196.)

Fawfaw's suicide risk evaluation form from the morning of November 12 is shown below.

---

# MICHIGAN DEPARTMENT OF CORRECTIONS - BUREAU OF HEALTH CARE SERVICES

**PATIENT:** Jacob Fawfaw
**DATE OF BIRTH:** ▓▓▓▓▓▓
**DATE:** 11/12/2017  10:25 AM
**INMATE ID:** 511339

## Evaluation of Suicide Risk

**Referral By:** Debra A. LeBlanc, LMSW       **Referral Date:** 11/12/2017

**Referral Reason:**
Per health care: "Inmate is "cutting" himself. Inmate stated that the "GODS" told him to do it. Inmate said it helps him to relax. Inmate is very relaxed at time of assessment. He is alert and oriented and answers all questions appropriately."

**Presenting Behaviors/Symptoms:**
- Despondency/depression
- Severe feelings of hopelessness and helplessness
- Absence of supportive relationship(s)
- Prior suicidal/self-injurious behavior requiring emergent/urgent medical attention
- Other: Inmate depressed, no plans/goals for "outside," parents died, history of mgmt plans

**Clinical Assessment**
**Axis I and Axis II:**
Axis I  No Diagnosis or Condition on Axis I (V71.09)
Axis II Personality Disorder, NOS (301.9)
**Axis IV:** Moderate
Problems related to:
    legal system/crime
**Axis V:**
Current GAF: 65 on 10/13/2017.

**Current Suicide Risk Level:** Moderate

**Comments/Explanations/Recommendations:**
Inmate was seen via telemed after superficially cutting his face, arms, and chest yesterday. He stated he's been "cutting for years" and that it helps him "get rid of some hurt and depression." He denied suicidal thoughts or ideations. He is eating and taking care of all ADLs. There was no sign of SMI and he denied having any hallucinations. He did share that his parents have died and his sisters are into drugs and he does not know where he will go or what he will do when he does leave prison. Goals and objectives were briefly discussed and he was told that he can kite psych anytime to talk and that it may help him to make goals. He is being lowered to moderate.

Management plan completed and distributed.

**Evaluation Date:** 11/12/2017       **Time:** 10:25 AM

**Provider: Robert T. McQueeney MD**

**Document generated by: Debra A. LeBlanc, LMSW**

---

(*Id.*, PageID.195.)

In summary, the medical records show that prison staff other than the named Defendants treated Fawfaw's physical injuries and assessed his risk for suicide or self-harm. As outlined above, Fawfaw was seen by medical staff at 11:56 p.m. on November 11, and then at 8:36 a.m. and 10:25 a.m. on November 12. He was placed in an observation cell after his first examination and provided with a POA to watch him closely. Fawfaw's statements to medical staff indicated that he had been cutting himself for years and that he was not suicidal. (*Id.*)

Fawfaw attributes troubling statements to Defendants. Regardless of what they might have said, Fawfaw was seen by professional medical staff and treated for the symptoms – mental and physical – he displayed. His condition was sufficiently stable to allow staff to assess his suicide risk level as moderate by the morning of November 12. (*Id.*) The undersigned concludes that the named Defendants cannot be deliberately indifferent to Fawfaw's serious medical needs when Fawfaw was receiving treatment by medical staff who are not named as defendants. As noted in a 2014 opinion from the District of Delaware, "[p]rison administrators cannot be deliberately indifferent 'simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.'" *Parkell v. Morgan*, 47 F. Supp. 3d 217, 223 (D. Del. 2014), *aff'd,* 682 F. App'x 155 (3d Cir. 2017) (quoting *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir.1993)). That reasoning applies here. As noted above, Fawfaw was seen by medical staff on multiple occasions on November 11 and 12, and they treated his conditions.

Perhaps Fawfaw is suggesting that Defendants were undercutting efforts by medical staff by goading him to kill himself. But the records reflect that Fawfaw said nothing of the kind when he spoke to medical staff. To the contrary, according to the records, he was relaxed and denied suicidal thoughts or ideations. (ECF No. 42-2, PageID.195.)

Fawfaw may also be claiming that Defendants allowed him to retain a razor or some type of cutting tool, thus enabling a suicide attempt or self-harm. Defendant Maki's affidavit states that all prisoners sent to the observation unit are strip-searched for weapons and contraband. (ECF No. 42-4, PageID.2014.) Maki also says that a POA was assigned to watch Fawfaw. (*Id.*) And, as outlined above, Fawfaw was repeatedly seen by medical staff. Fawfaw does not dispute these points. Fawfaw obviously found some way to cut himself. But he managed to hide this cutting implement from Maki, the POA and medical staff. Maki's claim that Defendants knew about a razor and allowed him to keep it is inconsistent with the undisputed facts and, in the opinion of the undersigned, is insufficient to establish a genuine issue of material fact.

The undersigned accordingly concludes that no genuine issue of material fact exists with respect to Fawfaw's deliberate indifference claims against Defendants.

### VI.  Qualified Immunity

As an alternative argument, Defendants move to dismiss Fawfaw's damages claims by asserting qualified immunity from liability. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions

generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir.2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether the government officials in this case are entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006).

"A right is 'clearly established' for qualified immunity purposes if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 2156 (2001)). The inquiry whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156; *see also Plumhoff v. Rickard*, 572 U.S. 765, 779, 134 S. Ct. 2012, 2023 (2014) (directing courts "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced") (internal quotation marks and citations omitted). Thus, the doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Humphrey*, 482 F.3d at 847 (internal quotation marks omitted).

"The relevant inquiry is whether existing precedent placed the conclusion" that the defendant violated the plaintiff's rights "in these circumstances 'beyond debate.'" *Mullenix v. Luna*, 36 S.Ct. 305, 309 (2015), citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In the undersigned's opinion Defendants are entitled to the defense of qualified immunity from liability. Fawfaw has failed to show that any of the Defendants acted with deliberate indifference towards his medical needs, failed to protect him from a known harm, or subjected him to conditions of confinement that violated the Eighth Amendment.

## VIII. Recommendation

It is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss this case.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: January 22, 2020          /s/ *Maarten Vermaat*
                                 MAARTEN VERMAAT
                                 U.S. MAGISTRATE JUDGE